IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| YIWU YUXIN E-COMMERCE FIRM,<br><br>*Plaintiff*,<br><br>v.<br><br>THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",<br><br>*Defendants*. | Civil Action No. 1:24-cv-00497<br><br>Honorable John Robert Blakey |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Plaintiff Yiwu Yuxin E-Commerce Firm ("Plaintiff") files this Memorandum of Law in support of its Motion for Preliminary Injunction ("PI Motion").

**I.     INTRODUCTION**

Plaintiff respectfully moves for a Preliminary Injunction against Defendants Nanafast Store, Panmens, EZSONA Store, BIYONGDE Store, feishang, YYOJ, Hoisy, USAPAMTIER, Jude Jewelers Store, KKGAI JEWELRY, jiezhizhijia, JIL MALL, Elfasio, OakkyDirect, ANIEJUFI, Thanks Choosing, Love Pretty US Store, Fagege EU, kaisuo4, Aekvinks, ELFASIO Store, EZSONA, Ayoiow, YanZi Jewelry, zhangqindianpu, ChangYuanShiWangJiaZhuangShi, Whoiy, and Oidea ("Defendants"), thereby enjoining Defendants from further violating the exclusive rights in Plaintiff's copyrighted works, U.S. Copyright Registration Nos. VA0002330298, VA0002323103, VA0002323967, VA0002342703, VA0002335665, VA0002310156, VA0002310158, VA0002342698, VA0002309395, VA0002319507, VA0002335331, VA0002342684, VA0002342724, VA0002322413, VA0002324543, VA0002319366, and VA0002319380 ("Copyrights"). As part of the Preliminary Injunction,

1

Plaintiff requests all relief previously granted in the Temporary Restraining Order (Dkt. No. 16) be extended during the pendency of the litigation.

As alleged in the Complaint, Defendants are infringing upon Plaintiff's exclusive rights in the Copyrights by reproducing copies, preparing derivate works, and/or distributing copies to the public by sale in the form of jewelry products ("Infringing Products") via at least the fully interactive e-commerce storefronts identified on Schedule A (Dkt. No. 2-1) ("Defendant Internet Stores"). In short, Defendants operate an off-shore, willful infringement operation, with absolute disregard for Plaintiff's Copyrights.

## II. STATEMENT OF FACTS

Plaintiff is the owner of all rights in the Copyrights. Exhibit 1, Declaration of Sam Chang at ¶ 4 ("Chang Decl."). Since September 10, 2019, Plaintiff has operated the online e-commerce store gthic.com. *Id*. at ¶ 5. Through the store, Plaintiff sells uniquely designed jewelry under the "GTHIC" trademark (U.S. Trademark Registration No. 6243455). *Id*. The "GTHIC" branded jewelry has received overwhelming high ratings from tens of thousands of customers as of the date of the filing of the Complaint. *Id*. at ¶ 6. Plaintiff's jewelry products are distributed and sold only thru gthic.com, and its authorized e-commerce stores. *Id*. at ¶ 7. These jewelry products are known for their distinctive designs and quality which are broadly recognized by consumers in this market. *Id*. For example, in 2022 alone, Plaintiff's sales revenue was approximately $5 million USD. *Id*.

## III. PROCEDURAL HISTORY

On February 6, 2024, the Court entered a Sealed Temporary Restraining Order (Dkt. No. 16) ("TRO") against Defendants. On February 15, 2024, the Court extended the TRO to March 5, 2024 (Dkt No. 20). The TRO authorized Plaintiff to provide notice of these proceedings to Defendants by sending an email to the email addresses provided for Defendant by third parties.

Pursuant to the terms of the TRO, Plaintiff provided Amazon.com, Inc. ("Amazon") with actual notice of the TRO via email. Exhibit 2, Declaration of Nicholas Najera at ¶ 3 ("Najera Decl."). Plaintiff received responsive production from Amazon, including expedited discovery to ascertain the electronic mail addresses of the Defendants. *Id*. at ¶ 4. Plaintiff served the Summons, Complaint, and TRO on the Defendants via email, in accordance with the terms of the TRO, on February 23, 2024. *Id*. at ¶ 5

### III.   ARGUMENT

#### A.   Extending the Relief Already Granted in the TRO to a Preliminary Injunction is Appropriate.

First and foremost, the standard for granting a TRO and the standard for granting a preliminary injunction are identical in this Circuit. *See*, *e.g.*, *Charter Nat'l Bank & Tr. v. Charter One Fin., Inc.*, No. 01 C 0905, 2001 U.S. Dist. LEXIS 6531 (N.D. Ill. May 15, 2001). Moreover, the requirements for entry of a preliminary injunction extending the TRO have been satisfied. *See, e.g., Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, No. 1:01-cv-00905, 2001 WL 527404, *1 (N.D. Ill. May 15, 2001) (citations omitted).

A temporary restraining order or preliminary injunction may be issued upon a showing that: "(1) there is a reasonable likelihood that Plaintiff will succeed on the merits; (2) Plaintiff will suffer irreparable injury if the order is not granted because there is no adequate remedy at law; (3) the balance of hardships tips in Plaintiff's favor; and (4) the public interest will not be disserved by the injunction." *Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1076 (N.D. Ill. 1996). Moreover, "[a]ny court having jurisdiction of a civil action arising under this title may… grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502. Here, Plaintiff has satisfied these requirements.

3

> i. *Jurisdiction is proper in this Court.*

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Copyright Act of 1976, 17 U.S.C. §§ 101, *et seq.*, and under 28 U.S.C. §§ 1331 and 1338(a). Venue is proper pursuant to 28 U.S.C. § 1391(c)(3).

This Court may properly exercise personal jurisdiction over Defendants since Defendants directly target business activities toward consumers in the United States, including Illinois, through at least the fully interactive, commercial Defendant Internet Stores. Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendant Internet Stores through which Illinois residents can purchase unauthorized copies of the Copyrights. *See, e.g., Christian Dior Couture, S.A. v. Lei Liu et al.*, 2015 U.S. Dist. LEXIS 158225, at *6 (N.D. Ill. Nov. 17, 2015) (finding personal jurisdiction proper over defendant offering to sell alleged infringing product to United States residents, including Illinois; no actual sale required); *Ford Global Techs., LLC v. New World Int'l Inc.*, 2016 U.S. Dist. LEXIS 78384, at *9-13 (E.D. Mich. June 16, 2016) (finding personal jurisdiction over defendant who sold products infringing design patents on its website and on an eBay storefront). Each Defendant is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

> ii. *Plaintiff has demonstrated a likelihood of success on the merits.*

To establish a *prima facie* case for copyright infringement under 17 U.S.C. § 501, a plaintiff must prove two elements: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *JCW Investments, Inc. v. Novelty, Inc.*, 482 F.3d 910, 914 (7th Cir. 2007). The owner of a copyright may obtain a certificate of copyright, which is "*prima facie* evidence" of its validity. 17 U.S.C. § 410(c). *See Wildlife Express Corp. v. Carol Wright*

4

*Sales, Inc.*, 18 F.3d 502, 507 (7th Cir. 1994). Copying may be inferred "where the defendant had access to the copyrighted work and the accused work is substantially similar to the copyrighted work." *Susan Wakeen Doll Co., Inc. v. Ashton Drake Galleries*, 272 F.3d 441, 450 (7th Cir. 2001) (quoting *Atari, Inc. v. N. Am. Philips Consumer Elecs. Corp.*, 672 F.2d 607, 614 (7th Cir. 1982)). *See also Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1169-70 (7th Cir. 1997). It is not essential to prove access, however, if the "two works are so similar as to make it highly probable that the later one is a copy of the earlier one, the issue of access need not be addressed separately, since if the later work was a copy its creator must have had access to the original." *Ty, Inc.*, 132 F.3d at 1170. Moreover, copyright protection extends to works derived from the original work, as § 101 of the Copyright Act defines a "derivative work" as "a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization or any other form in which a work may be recast, transformed, or adapted." 17 U.S.C. § 101.

      Here, Plaintiff owns the Copyrights as the claimant of record and as the holder of all rights and permission therein. *See* Dkt. No. 2-3, Certificates of Registration. Secondly, the unlicensed Infringing Products are so clearly substantially similar to the protected works, as exemplified below, that it is highly probable that the Infringing Products are copies of the Copyrights or, at the very least, are derived from the distinctive creative content found in the Copyrights. *See* Dkt. Nos. 2-2.

| Exemplary Infringing Products | Exemplary Copyrighted Works | Copyright Certificate Number |
|---|---|---|
| | | VA0002309395 |
| | | VA0002319380 |
| | | VA0002322413 |

As shown above, the *prima facie* case of infringement is clear and establishes that Plaintiff is likely to succeed on the merits of the copyright claim. *See WPIX, Inc. v. ivi, Inc.*, 765 F. Supp. 2d 594, 617 (S.D.N.Y. 2011) (finding that the plaintiffs "easily" met their burden of likelihood of

6

success on the merits where plaintiffs demonstrated that they owned valid copyrights and that defendant was using their works without their consent and in the absence of any statutory exception). Accordingly, Plaintiff has established a *prima facie* case of copyright infringement.

          iii.     *Plaintiff has demonstrated irreparable harm because there is no adequate remedy at law.*

"By its very nature, a claim of invasion of intellectual property such as a copyright… demands injunctive relief if the value of that property is not to be destroyed by the alleged infringer. And the need for such injunctive relief is the paradigmatic example of the absence of an adequate remedy at law." *Artmark-Chicago, Ltd. v. E. Mishan & Sons, Inc.*, No. 90 C 4512, 1991 U.S. Dist. LEXIS 20600 at *5 (N.D. Ill. Jan. 4, 1991). "[I]t is well established that the loss of goodwill and reputation, if proven, can constitute irreparable harm." *Life Spine Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 546 (7th Cir. 2021) (citing *Stuller, Inc. v. Steak N Shake Enterprises, Inc.*, 695 F.3d 676, 680 (7th Cir. 2012)).

Defendants' trespass on the exclusive rights in the Copyrights has and continues to irreparably harm Plaintiff by depriving Plaintiff of the ability to control the creative content protected by the Copyrights, it devalues the brand by associating it with inferior quality goods, and it undermines the value of the Copyrights by creating the impression that infringement may be undertaken with impunity which threatens Plaintiff's ability to develop further licensees and maintain existing licensee relationships. Chang Decl. at ¶ 14-20. These are recognized irreparable harms for which monetary compensation is inadequate. *See MGM Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1219 (C.D. Cal. 2007) ("In sum Plaintiffs' have offered two independently sufficient grounds for a finding of irreparable harm. Plaintiffs will suffer irreparable harm because of StreamCast's likely inability to pay for the past and/or future infringements that it has induced. Additionally, StreamCast's inducement has and will continue to irreparably harm Plaintiffs' ability

to enforce its exclusive rights."); *Warner Bros. Entm't, Inc. v. WTV Sys.*, 824 F. Supp. 2d 1003, 1013-14 (C.D. Cal. 2011) (recognizing that the perception of the ability to infringe copyright protected work undermines the ability to develop and conduct business). Accordingly, Plaintiff has established that it will be irreparably harmed by Defendants' infringing conduct that cannot be remedied by monetary damages alone.

Moreover, given that Defendants are individuals and businesses who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions with no U.S. presence, any monetary judgment is likely uncollectable. *See Robert Bosch, LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (Fed. Cir. 2011) (reversing denial of permanent injunction where the likely availability of monetary damages was in question); *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, No. 2:04-cv-0032, 2007 WL 869576, at *2 (E.D. Tex. Mar. 21, 2007) (finding inadequacy of legal remedies where "all three Defendant are foreign corporations and that there is little assurance that [plaintiff] could collect monetary damages"). For the reasons stated above, Plaintiff will suffer immediate and irreparable injury, loss, or damage if a permanent injunction is not issued.

> iv. *The balancing of harms tips in plaintiff's favor, and the public interest is served by entry of a permanent injunction.*

The Court must consider the harm that Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm Plaintiff will suffer if relief is denied. *Ty, Inc.*, 237 F.3d at 895. In other words, the balance of harm to Plaintiff if the injunction is wrongly denied must outweigh the harm to the Defendants if the injunction is wrongly granted.

Here, the harm to Plaintiff if the Court wrongfully denies the injunction would be the continued willful infringement of the Copyrights, potentially unquantifiable lost goodwill, and diminished market benefit. On the other hand, a wrongfully entered injunction will eliminate

Defendants' ability to sell Infringing Products. Since Plaintiff has a strong likelihood of success on the merits and since any such harm to Defendants' would be short-lived and purely economic, it is clear that the balance of equities weigh in favor of Plaintiff.

The final prong requires the Court to consider the public interest. "[I]t is virtually axiomatic that the public interest can only be served by upholding copyright protections and correspondingly, preventing the misappropriation of skills, creative energies, and resources which are invested in the protected work." *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3rd Cir. 1983). The public interest is best served in this case by protecting the Copyrights. First, an injunction would protect the public's expectations that obtaining a copyright ensures one's property interest. Defendants' infringing conduct clearly flies in the face of public policy, as their only purpose appears to be financial gain from blatant copyright infringement. For these reasons, it is respectfully submitted that granting the PI Motion is in the public interest.

### B. The Equitable Relief Sought Remains Appropriate.

In relief, Plaintiff seeks a preliminary injunction enjoining and restraining Defendants from further violating Plaintiff's exclusive rights in the Copyrights on or in connection with the Defendant Internet Stores. Furthermore, Plaintiff seeks a continued asset freeze to ensure the availability of permanent monetary relief given the likelihood that Defendants will simply transfer their ill-gotten assets in an attempt to evade any judgment against them entered by this Court. Plaintiff requests all relief previously granted in the TRO be extended until the pendency of the litigation. Such relief is explicitly authorized under 17 U.S.C. § 502.

#### i. *The sale restraint is appropriate.*

To prevent the Defendants from further violating Plaintiff's exclusive rights in the Copyrights, Plaintiff respectfully requests that the injunctive relief already awarded be extended

through the pendency of this case. A continued sales restrain is necessary to enjoin Defendants from continuing to reproduce and distribute copies of the Copyrights.

    ii.   *The asset restraint is appropriate.*

Plaintiff also requests a restraint of Defendants' assets so that Plaintiff's right to an equitable accounting of Defendants' profits from the sales of Infringing Products is not impaired. Issuing an asset restraint will ensure Defendants' compliance. If such a restraint is not granted in this case, Defendants may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. Specifically, upon information and belief, the Defendants in this case hold most of their assets in China, making it easy to hide or dispose of assets, which will render an accounting by Plaintiff meaningless. Courts have the inherent authority to issue a prejudgment asset restraint when the complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992).

In addition, Plaintiff has shown a strong likelihood of succeeding on the merits of its copyright infringement a claim, so according to the Copyright Act 17 U.S.C. § 504(b), Plaintiff is "entitled to recover the actual damages suffered… and any profits of the infringer... In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." Plaintiff's Complaint seeks, among other relief, that Defendant account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' infringing conduct. Dkt. No. 1 at 9-10. Therefore, this Court has the inherent equitable authority to grant Plaintiff's request for a continued prejudgment asset freeze to preserve the equitable relief sought.

10

The Northern District of Illinois in *Lorillard Tobacco Co. v. Montrose Wholesale Candies* entered an asset restraining order in a trademark infringement case brought by a tobacco company against owners of a store selling counterfeit cigarettes. *Lorillard*, 2005 WL 3115892, at *13 (N.D. Ill. Nov. 8, 2005). The Court, citing *Grupo Mexicano de Desarollo, S.A. v. Aliance Bond Fund*, 527 U.S. 308 (1999), recognized that it was explicitly allowed to issue a restraint on assets for lawsuits seeking equitable relief. *Id.* (*citing Grupo Mexicano*, 527 U.S. at 325 (*citing Deckert v. Independence Shares Corp.*, 311 U.S. 282 (1940)). Because the tobacco company sought a disgorgement of the storeowner's profits, an equitable remedy, the Court found that it had the authority to freeze the storeowner's assets. *Id.; see also Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992); *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988 (7th Cir. 2002) ("since the assets in question... were the profits of the [Defendant] made by unlawfully stealing [the plaintiffs'] services, the freeze was appropriate and may remain in place pending final disposition of this case."); *accord* 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:40 (4th ed. 2013). The equitable relief sought in a trademark case is more than analogous to the equitable relief sought in this copyright case.

Here, Plaintiff has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' infringing conduct, and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to offshore bank accounts. Accordingly, the granting of a preliminary injunction preventing the transfer of Defendants' assets is proper.

    iii.    *The remaining equitable relief appropriate.*

Plaintiff further seeks that all remaining equitable relief previously granted in the TRO, be extended here in the Preliminary Injunction. Such relief includes limited expedited discovery and alternative notice by email.

## IV. CONCLUSION

In view of the foregoing, Plaintiff respectfully requests that this Court enter a Preliminary Injunction enjoining Defendants from further infringement and to extend the equitable relief granted in the TRO.

DATED: February 29, 2024 Respectfully submitted,

By: */s/ Stevenson Moore*
Stevenson Moore
Texas Bar No. 24076573
smoore@nilawfirm.com
Nicholas Najera
Texas Bar No. 24127049
nnajera@nilawfirm.com

**NI, WANG & MASSAND, PLLC**
8140 Walnut Hill Ln., Ste. 615
Dallas, TX 75231
Tel: (972) 331-4600
Fax: (972) 314-0900

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of February, 2024, Defendants were served with a copy of the foregoing via email as per the Court's Temporary Restraining Order (Dkt. No. 16).

*/s/ Stevenson Moore*
Stevenson Moore